Right. Our final case this morning is Von Busch v. Board of County Commissioners for Geary County, number 253026. And we will start with counsel for appellant, Ms. Davis. Good afternoon, your honors. May it please the court. Chloe Davis on behalf of appellant Tammy Von Busch. Your honors, just to make it aware, I do intend to reserve 3 minutes for rebuttal if time permits after the court's questions. Your honors, this appeal arises out of Ms. Von Busch's employment as the director of the county health department with the defendant appellee, Board of County Commissioners for Geary County, Kansas. Ultimately, your honors, this appeal comes down to 1 question. Was Ms. Von Busch's speech made pursuant to her official duties as the director of the health department? Your honors, without going too far into the facts, I would like to highlight some important facts that were established in Ms. Von Busch's amended complaint. Ms. Von Busch served as the director of the county's public health department beginning in 2017, and she stayed in that position until her termination in November of 2021. Between 2017 and 2021, she received positive performance feedback from the county. She specifically was described as a good leader and doing an exemplary job. These compliments included making good use of budgets allocated to the department. However, in January of 2021, a new county commissioner, Patricia Giordano, was elected to the Board of Commissioners. Following this commissioner's election to the board, Ms. Von Busch noted concerning behavior by Commissioner Giordano. This behavior included a refusal to allocate necessary funding to the health department and repeatedly exhibiting unprofessional behavior toward county employees and members of the public. This behavior prompted Ms. Von Busch to complain about Commissioner Giordano, including Commissioner Giordano's unprofessional troubling behavior at monthly public forum meetings and in private social settings. In response, Commissioner Giordano retaliated against Ms. Von Busch by sending harassing emails, making disparaging comments about Ms. Von Busch, and being combative towards Ms. Von Busch. Commissioner Giordano's retaliatory response to Ms. Von Busch prompted Ms. Von Busch to further express concern about Commissioner Giordano's fitness for office to the public in both public meetings and private social settings. Shortly thereafter, Ms. Von Busch received a notice of discipline for, quote, creating conflict, end quote, and, quote, spreading gossip, end quote. In November of 2021, Ms. Von Busch was ultimately terminated from employment for voicing those concerns. I think one thing that is important to mention here, Your Honors, although I'm sure that this court is well aware of the pleading standard at the pleading stage, the Ashcroft-Iqbal standard is just that the complaint provide enough factual material for the court to draw a reasonable inference in favor of the plaintiff. Ms. Davis, I've got a few questions that go to that, but before I get there, I need to ask you what impact our recent decision in Timmons v. Plotkin has on this case. I apologize, Your Honor. I'm not familiar with that case. I did not include it in my briefing, so I apologize that I'm not prepared with an answer to your question today. Well, it issued last week, and it's a Garcetti-Pickering case, and I think both parties and the court are going to have to consider that case in relation to yours. But if you haven't looked at it, I'm not going to push questions about it at this time. So let's get to the complaint. How does the amended complaint describe your client's official duties? Your Honor, it does not. It does provide some feedback on some of the performance evaluations that she received, which does kind of describe some of the things that she would have been doing in her position. However, the complaint within the four corners of the complaint does not describe any of her official duties in her position. And the problem, though, is that the first Garcetti-Pickering factor asked the question whether the statements at issue are pursuant to the employee's official duties. And if we don't have anything in your complaint about what those official duties are, how do we apply that factor? Understood, Your Honor. I think the distinction here is that complaining about Commissioner Giordano and her unfitness for office or her unprofessional behavior would not fall within the duties of a public county health department director. I think that that's a reasonable inference that could be drawn by the court based on the basic understanding of a county public health department. Complaining about a specific county commissioner and their unprofessional behavior for their unfitness for office would not fall within those duties, Your Honor. Well, does the amended complaint say whether Ms. von Busch addressed Ms. Giordano's conduct and fitness for office, for example, at the September 27 board meeting? It does not, Your Honor. The specific paragraph that references the September 2021 meeting outlines her complaints that have to do with funding the health department. What the amended complaint was trying to do was set up why the retaliation occurred specifically. But Commissioner Giordano continued to complain about the behavior of Commissioner Giordano following the September 2021 board meeting in both public forum meetings and in private settings. One thing I would like to also emphasize, Your Honor. Counsel, the only specific date and location that you have in your complaint about her statements is the September 27 board meeting. So you just said that it doesn't allege that she said anything about Ms. Giordano there. Let's say, though, that she did talk about the budget for the health department. Why wouldn't comments from the director of the health department to the board about the budget of her department? Why wouldn't that be within the scope of her official duties? Isn't she isn't that her job to defend is to defend her budget? Your Honor, I would like to make the distinction that I think that it is more Ms. Von Bush's job to work with the resources that she's allocated. The end of the day, her position does not have any final say over the budgetary allotments awarded to the department. And she had been given previous feedback on her successful ability to do just that, which is within the four corners of the complaint. Your Honor. Well, I'm not sure that that really answered my question. If she stands up in front of the board, which controls her budget, allows her and her staff to do her job and she voices concerns about cuts to the budget or elimination of the department or whatever it is. Why isn't that within the scope of her official duties? I mean, isn't it the job of a department head to protect the department, including the financial health of the department? Your Honor, I think the inference would be drawn that and I apologize. I'm reiterating what I said earlier. But it's her job to run the department based on the budget allocated to her. So I would say the inference would not be that it's her job to push back on on the Board of County Commissioners as to what that amount may be. So not within the scope, is that what you're saying? All right. All right. Okay. Well, where do where did she make these comments about Miss Giordano where the complaint only talks about private social settings and public forums? But it doesn't say to whom she made the statements, where she made the statements, what exactly the statements were, where they made to the board, where they made in public forums. I mean, the complaint really is pretty thin in terms of telling us what exactly happened here. To answer your question directly, Your Honor, these statements were made in various locations, and I understand that the complaint doesn't specify whether the complaint or whether the comments were made at her home or at a store in the community. I understand, Your Honor, that it doesn't state that. Ultimately, the comments in reality were made in various places throughout the community that would be considered private social settings. One thing I would like to highlight, Your Honor, is that the term the language private social settings is not a legal analysis. It's not a legal conclusion. It's not even an element of the Garcetti test, the Garcetti Pickering test. It is a factor to be considered on whether or not an official is speaking to their official duties or not. However, the language private social settings is not a legal conclusion, Your Honor. And so, therefore, our position is that under the pleading standard, it satisfies that standard. Well, the court thought that those allegations about private social settings were too conclusory. Why wasn't the court correct about that? Your Honor, so it would be our position that, again, private social setting isn't a legal conclusion. And I think this is where it speaks to the degree of how specific do the pleadings need to be in order to satisfy that the Ashcroft-Iqbal standard. And our position is that it just needs to provide enough factual information for the court to draw an inference that plaintiff could prevail based on these facts. And as I mentioned, Your Honor, the phrase private social settings is not a legal conclusion. And so, therefore, factually, if accepted as true, the inference could be drawn that if she's making those comments in a private social setting, that she would not be making them pursuant to her duties. So how are we supposed to know that? Because there are other cases where people have made statements outside of a work setting, purportedly statements between friends that were ultimately found to be, you know, within the scope of their duties. Your Honor, I believe that you're referring to the Casey case. If I'm if I'm incorrect, I apologize. But I think one distinction that's important here, which I did want to touch on, is that the lower court and the defendants at times seem to conflate Ms. Von Bush's language or her her comments, her speech. Part of her speech was within the scope of her department. Theoretically, like if I if we are going to to give that leeway that the speech about funding the department is within her duties. There's a secondary part of her speech that is about the professionalism and fitness for office of Commissioner Giordano and the lower court and the county seem to conflate those two things. You'll see it in the last paragraph of the lower court's decision. The court characterizes it as complaints about funding the health department and the behavior of Commissioner Giordano and the influence on the department. However, the the speech was two separate topics. And to circle back to your question, Your Honor, the speech about Miss Giordano's Commissioner Giordano's professionalism or fitness for office. Made in private social settings or to the public at large, despite who it was made to, whether it was a friend or any other member of the public would would satisfy the pleading standard. OK, so let me let me I want to on the social on the social setting idea, I guess my only point to you would be is I have a hard time looking at that and understanding what was said in social settings and and who the recipient of the speech was. So it makes it it makes it difficult to determine if you can satisfy that. But let me let me ask you a hypothetical. So let's presume you're at the September meeting. And your client is is addressing the board and and making stating concerns about the budget and this and that. And and she says and Commissioner Giordano is is attempting to cut our budget. She's acting unprofessionally. We need we need to push back on that and make sure the budget is preserved so we can keep doing our good work. What do you got there? I mean, is it isn't that indistinguishable? If that speech is mixed up with the budgetary speech, which, you know, we don't know where it was said, not said, I mean, isn't that isn't that problematic? It is problematic, Your Honor, especially in light of the stage of these proceedings at the pleading stage. Again, I think it circles around to to what degree of detail is required in the pleadings. To answer your question more directly, I think the court at that point would be required to split hairs and decide, OK, the complaints about funding the department unprotected because it falls within the scope of the job. The complaints about professionalism. Does not fall within the scope of of the job because it's not the director's job to supervise or oversee the behavior of that commissioner. So, if you're if your client is basically. And I'm not saying this is how it happened, but on a diatribe to the board. And talking about things that are within the scope of her of her job and then throws in a couple of personal zingers about the county commissioners, then we have to parse through those and determine which ones are in the scope and which ones are not. I think such an analysis, ultimately, the answer is yes, I think such an analysis would be much more appropriate at a summary judgment proceeding stage. That's why it's you guys are tasked with the hard decision of deciding what the standard is at the pleading stage and how specific pleadings need to be. One thing I think and I see that I'm on time if I could just answer your question, Judge Carson, a little bit more in depth. One thing I think that's important as well is to note that respond Bush was disciplined for this exact thing they call it gossiping they call it creating conflict. And so, clearly, the county didn't think that that behavior fell within her, her job duties because they ultimately disciplined and terminated her for it. Your honors if there are no further questions if I could just briefly conclude. Please do. In summary, your honors, the judges are tasked today with figuring out whether Miss von Bush's speech fell within the job that she was paid to do. Ultimately, monitoring and complaining about the behavior of Commissioner Giordano did not fall within the job duties of Miss von Bush, as the county's public health department director. The other thing that the court is tasked with looking at today is the pleading standard which is well established under ash ball. Excuse me, Ashcroft vehicle, and here, it would be our position that that pleading standard was satisfied. I did not get to touch on the secondary prong of the Garcetti Pickering test. If I could have a few brief minutes on rebuttal potentially after we hear from the other side it would be appreciated but ultimately we ask that the lower courts decision be reversed and remanded. Thank you. Thank you counsel. Mr Linden. Good afternoon, your honor may it please the court, Patrick Leonard for the board of county commissioners of Gary County, Kansas. The present appeal turns upon a question of the sufficiency of the pleadings. What does a former government official need to plead in order to allege a plausible retaliation claim under 42 USC section 1983, specifically as to whether she had engaged in protected speech under the first amendment. It is not enough to merely allege that one engaged in protected speech. There must be sufficient fact information to demonstrate on the face of the pleadings that the speech was one not made as part of the former officials duties or two that it concerned issues of public concern. Here the plaintiff on Bush's amended complaint lacked the information sufficient to plausibly allege that she engaged in protected speech outside of the scope of her official duties and that such speech involved issues of public concern. As a result, the district court's dismissal of plaintiff's action should be affirmed. Counsel, yes, let me just again, I don't want to spend time on it if you haven't looked at it, but if you had an opportunity to look at this Timmons versus Plotkin decision. I did not get a chance to review it before today. During Palin's argument, I did take a brief review of that. I did see that there was discussion about the scope of what constitutes in accordance with official duties. That one does look at the nature of the duties being performed, not simply whether it concerns information learned in the course of one's official duties. But here, I think the application of Timmons in my very brief opportunity to review this needs to be viewed in the context of our plaintiff's context here. She was the director of the Gary County Health Department. She was a top level employee with essentially broad duties and broad responsibilities for the administration. And I would say good governance of that department. And that touched all aspects of it. It's viability. Counsel, did it touch this? Was her speech about Ms. Giordano's conduct and fitness for office within the scope of her official duties? That I don't think we can clearly answer on the face of the amended complaint because we don't know what the particular concerns being raised were. Were they concerns about her conduct in relation to communications about the health department or issues concerning the health department? Was it involving other aspects of the county's operations? So I don't think we have enough information from the amended complaint to make that call. And that does get a little bit into the second Pickering factor. But first, let me walk through the first step of the Pickering analysis because I think it is truly important here. Again, Ms. von Busch was the director of the health department. She had broad levels of responsibility. And as this court has said in the first element of the Pickering test, determining what is within the scope of an employee's duties for purposes of determining whether it is speech as part of those duties or outside of those duties. This court has indicated that this is a heavy barrier for most employees. And here I think the burden is even steeper given the nature of the employment at issue here. When you're the head of a department, that is a very broad range of duties, a very broad range of responsibilities. I would say that those duties extend to the full extent of the operations of that department, as opposed to a more subordinate employee that may have a more constrained scope of duties. So here, what we know from the first amended complaint, it starts with an articulation of various concerns that Ms. von Busch had identified and then steps to a discussion about raising certain quote issues at board meetings. There's no express connection in the amended complaint between that first articulation concerns and the issues. The only issue that is clearly articulated as being a issue of speech to the board meetings was, I believe, the issue, a rumor about the health department being abolished or dissolved. Could I just ask you about the board meetings and what we can glean or maybe infer from the complaint about the board meetings? Are these meetings where this is where the board conducts its business? In other words, it actually does consider budget issues and other matters and votes on them. And I mean, it's truly they're governing through the board meeting. Or are these board meetings more of a public forum? The reason I'm asking this is that I've been wondering whether if Ms. von Busch is going to the board meetings and she's really there to make a statement to the community at large. Does that help her in saying that, look, I'm speaking beyond the scope of my official duties. I'm there to talk to the public and I'm a concerned citizen, too. So, what can you tell us about the board meetings and understanding that we are only looking at the complaint? You may be able to tell us a lot about the board meetings, but we just have to look at the complaint. Again, I don't think the amendment complaint makes that truly clear. And I wasn't involved in this stage of the representation in front of the district court. So, I honestly don't have clear knowledge one way or the other of the board meetings in question, what was involved. But even if they were more of an informal nature, not formal meetings to set county policy, if there were communications by the board as a body with its constituents, that's still a function of the government. And I don't think that the plaintiff, Ms. von Busch, can necessarily step outside of her role as the head of the health department, speaking on health department issues and say that she's speaking as a private citizen. I think they are so closely intertwined that you can separate the two, even in a more informal context, if it was just a meeting for public comment. But even a meeting for public comment is still a formal function of the board, if that's indeed what these meetings were, which, again, we don't know from the amended complaint or whether they were meetings to officially deliberate and decide upon county policy. But those are still official functions. So, getting back to the first element of the Pickering test, we have the initial statement of concerns, some allegations about raising issues that are largely unspecified before the board. But the issue that is specified is certainly a matter that is directly connected to Ms. von Busch's duties as the director of the health department. And so, at least under the first element of the Pickering test, to what we know about what you said at board meetings, we know that this was not speech protected by the First Amendment. Now, with regard to, there has been some discussion about the conversations in private context. And I will agree, I think, I believe it was Judge Ide who made the comment that's very nonspecific as to what those conversations were, the context in which they were held, what was said, and even really what the specific discussion about these other topics were. I'm minded of Judge Ide's recent opinion in Peterson v. Williams. It's an unpublished decision. The West's law side is 2020 WL 142-1959, which I think echoes this case a great deal in that there, too, there were very vague allegations as to what the nature of the speech was, the context in which it was being held. I think echoes the portions of the complaint here that are talking about these private discussions. We don't know what was said. We don't know to whom it was said, the context in which it was said. And the Peterson case makes a place of considerable focus upon those circumstances, knowing what was said, what was the context, to know if what was said in those situations was a matter of public interest. And I would also submit whether or not those communications were also in some way tied to Ms. Von Bush's role and duties as the director of the health department. Well, counsel, the complaint, paragraphs 22 and 23, alleges that the board's disciplinary notice said that Ms. Von Bush had been spreading gossip, quote, unquote, spreading gossip, and that her performance evaluation said that she had not shown, quote, good judgment in addressing a rumor with the Board of County Commissioners, end of quote. So why doesn't that help make the private social settings allegations more than just conclusory? Why doesn't that make them sufficient? I don't think necessarily that from those two paragraphs, you can tie that to the private context discussions as opposed to the statements in front of the board. The rumor discussion or the mention of rumor, I believe, is elsewhere in the amended complaint as being discussed in the context of the board meetings. Would you agree that gossip and rumor would not be within the scope of her official duties? I think it would depend on what the gossip was about. Is it related to operations in the health department or Ms. Von Bush's dealings with Commissioner Giordano about the health department? You know, while you might characterize it as gossip or rumors, if it is tied to something that is part of her official duties, I think it is still within that scope. So unless we know what the speech was and the context of it, I don't think we can say that a sufficient claim has been pleaded here, even with regard to the alleged conversations that are in a private context. We just don't have enough factual information in the pleadings before us. The other aspect of this that also I think is problematic in lacking the information about what happened or what was discussed in the private meetings is there's been some discussion about, well, that board member Giordano was engaging in unprofessional behavior or misconduct. I think that starts leading into questions of, well, are we talking about issues that rise to a level of actual misconduct or are we talking about issues of personal grievance or differences of opinion? The latter have not generally be considered matters of public interest. Now, if there was an allegation here, which we don't have, that Commissioner Giordano had violated the law or acted in a way that was in violation of a county policy, that might be a very different question. But again, we don't have any of those sorts of allegations here. So ultimately, it's a lack of factual detail here that supports the district court's result. The petition, or I'm sorry, the amended complaint we have here does not provide us any factual information that takes Ms. von Busch's speech and places it either outside of the scope of her official duties, which again were very broad, or clearly identifies, if there were matters outside of that official scope, makes it clear that those were issues of public interest. And so because of this, the petition, or I'm sorry, the amended complaint is insufficient to state a plausible claim for retaliation under Section 1983. And as a result, the district court reached the correct result in deciding to dismiss the claims on the amended petition. If the court does not have any other questions, I am happy to yield the floor back to counsel for appellate. Could I just ask you whether the district court erred by failing to address Ms. von Busch's statements about Ms. Giordano's fitness for office? I don't believe that that is error, or even if it is error, that is reversible error here, because again, as I stated a few moments ago, we don't have enough information from the amended complaint as to what the nature of that allegation was. I mean, fitness for, unfitness for, you know, that role, that's a very broad term. And I think without some level of factual details, what was the conduct that was the basis of this speech, or what was it about? I don't think we have sufficient information here, again, to cross the threshold to a plausible claim. Well, thank you, counsel. If there are no further questions for Mr. Linden, and I will take you up on your offer to yield some of your time and let Ms. Davis take, you've got one minute. Thank you for the court's time. Take us to the end of today's session. Thank you, Your Honor. I did just want to touch on the second prong of the Pickering-Garcetti test. It was not raised by the appellant on appeal. However, it was touched on by the county on appeal. So I do just want to take a second to emphasize that it's fairly well established in the case law that although speech related to personal disputes or personnel disputes within employment would not be protected. However, this was not about personnel disputes. Ms. von Busch's speech was related to the unprofessionalism and unfitness for office of Ms. Giordano. And so, therefore, it was aimed or intended to expose her impropriety or her malfeasance and her unfitness for office. It was it really had nothing to do with the day to day going on of the county health department. Your Honors, I also did want to touch on the Timmons versus Plotkin case briefly. If I understand correctly, what I was able to look at briefly, essentially. As pled in the amended complaint, Ms. von Busch did have these conversations and expressed her speech in private social settings. So it'd be our position that in line with the recent decision, it would be protected speech based on a brief, brief, very brief reading of the case mentioned. Your Honors. Understood. Understood. Thank you, counsel. Thanks to both of you for your arguments this morning. The case will be submitted. Counsel are excused and the court will stand in recess until tomorrow morning at eight thirty a.m. Thank you. Thank you.